**ORIGINAL**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

**RECEIVED**
MAY 3 1 2018
**PRO SE OFFICE**

| | |
|---|---|
| SEAN M. MURRAY, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| JP Morgan Chase Bank, N.A., | ) |
| Bank Of America Bank, N.A., | ) |
| Equifax Information Services LLC | ) |
| Experian | ) |
| TransUnion, LLC | ) |
| | ) |
| Defendants. | ) |
| | ) |

Case No. 1-18-cv-02468-LDH-JO

**AMENDED VERIFIED COMPLAINT**

**(Jury Trial Demanded)**

### NATURE OF ACTION

1.      This is an action for damages brought by Sean M. Murray ("Plaintiff"), an individual and consumer, pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. against JP Morgan Chase Bank, N.A. ("Chase"), Bank of America Bank, N.A. ("BOA"), Equifax Information Services LLC, Experian and TransUnion, LLC. ("Defendants").

### JURISDICTION, VENUE AND STANDING

2.      Jurisdiction of this Court arises under 15 U.S.C. § 1681p *et seq.,* and 28 U.S.C. § 1331 and 1367.

3.      Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where the acts and transactions giving rise to Plaintiff's action occurred in this district, where Plaintiff is domiciled in this district, and where Defendants transact business in this district.

4.      "In determining whether an intangible harm constitutes injury in fact, both history

and the judgment of Congress play important roles." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016). Congress is "well positioned to identify intangible harms that meet minimum Article III requirements," thus "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law.'" Id. (quoting Lujan v. Defs of Wildlife, 504 U.S. 555, 578 (1992).

5.      "Congress's judgment in enacting the FCRA was to provide consumers a right to privacy. The plain language of the statute as well as the legislative history illustrate this intent." Perrill v. Equifax Info. Services, LLC, A-14-CA-612-SS, 2016 WL 4572212, at *3 (W.D. Tex. Aug. 31, 2016) (citing 15 U.S.C. § 1681(4)) ("There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."); see also Thomas v. FTS USA, LLC, 2016 WL 3653878, at *8 (E.D.Va. Jun. 30, 2016) ("It is clear from the statute's legislative history that Congress intended that the FCRA be construed to promote the credit industry's responsible dissemination of accurate and relevant information and to maintain the confidentiality of consumer reports."); Hawkins v. S2Verify, No. C 15–03502 WHA, 2016 WL 3999458, at *5 (N.D.Cal. Jul. 26, 2016) ("[Under the FCRA], Congress decided to restrict access to information regarding arrests older than seven years, which bestowed a degree of privacy on that information.").

## THE FAIR CREDIT REPORTING ACT

6.      The FCRA was enacted by Congress to ensure fair and accurate credit reporting and to protect consumer privacy. See Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52 (2007).

7.      The FCRA defines a "consumer report" as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal

characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . employment purposes." 15 U.S.C. § 1681a(d)(1)(B)."The FCRA is not an employment statute, but it imposes a duty on employers to provide prospective employees with information about their consumer reports." Johnson v. ADP Screening and Selection Services, Inc., 768 F. Supp. 2d 979, 983 (D. Minn. 2011).

8.    Before even obtaining a consumer report for employment purposes, an employer must make "a clear and conspicuous disclosure . . . in writing . . . in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A)(i).

9.    The consumer must also authorize in writing the procurement of the report. 15  U.S.C. § 1681b(b)(2)(A)(ii).

10.    "[I]n using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates . . . a copy of the report." 15 U.S.C. § 1681b(b)(3)(A).

11.    "The clear purpose of this section is to afford employees time to discuss reports with employers or otherwise respond before adverse action is taken." Goode v. LexisNexis Risk & Info. Analytics Group, Inc., 848 F. Supp. 2d 532, 537 (E.D. Pa. 2012) (citation to secondary sources omitted).

12.    "Congress's use of the word 'before' shows that there must be some time between notice and action." Johnson, 768 F. Supp. 2d at 983.

13.    "Adverse action" includes "a denial of employment or any other decision for

3

employment purposes that adversely affects any current or prospective employee." 15 U.S.C. §
1681a(k)(1)(B)(ii).

14.     "Adverse action" also means "an action taken or determination that is . . . made in
connection with an application that was made by, or a transaction that was initiated by, any
consumer . . . and . . . adverse to the interests of the consumer." 15 U.S.C. § 1681a(k)(1)(B)(iv).

15.     "[A]n adverse action occurs when the decision is carried out, when it is
communicated or actually takes effect." Goode, 848 F. Supp. 2d at 540.

16.     This includes when a consumer reporting agency analyzes and negatively
adjudicates a prospective employee's consumer report or employment application on behalf of an
employer. Id.

**PARTIES**

17.     Plaintiff is a natural person domiciled in Queens County, New York State.

18.     Plaintiff is a "consumer" as defined by the 15 U.S.C. § 1681a(c).

19.     Defendants Chase and BOA use a means or facility of interstate commerce for the
purpose of furnishing information to consumer reporting agencies.

20.     Defendants Chase and BOA are "person(s)" as defined by 15 U.S.C. § 1681a(c).

21.     Defendants Equifax Information Services, LLC, Experian, and TransUnion, LLC
("Defendant CRA's") are consumer reporting agencies as defined by 15 U.S.C. § 1681a(f) and
conduct substantial and regular business activities in this judicial district. Defendants are
Georgia, Ohio and Delaware corporations respectively, registered to do business in the State of
New York. Equifax and Transunions' registered agent for service of process is Corporation
Service Company and may be served with process at 80 State Street, Albany, NY, 12207.

Experian Information Solutions, Inc., 475 Anton Boulevard, Costa Mesa, California, 92626.

Bank of America Headquarters is 100 N. Tryon St. Charlotte, NC 28255

## FACTUAL ALLEGATIONS

22.      From the years of 2006 through 2010, Plaintiff allegedly opened four accounts with Defendant Chase with account numbers beginning in 54660**, 42668**, 43122**, and 54662** (the "Accounts"), and one account allegedly with Defendant BOA with an account number ending in **3342.

23.      In 2012, Defendant Chase issued 1099-C cancellation of debt forms on three of the Accounts. (54660**, 42668**, and 54662**) In 2014, Defendant Chase issued the fourth for account (43122**) and Defendant BOA issued one for account (**3342).

24.      A true and accurate copy of the Defendant Chase's 2012 1099-C cancellation of debt forms are attached to this complaint as Exhibit A.

25.      Each of the cancelled Accounts state that the alleged debts were discharged on October 27, 2012 because of an "identifiable event." Exhibit A.

26.      The identifiable event code listed for each Account was G which signified that Defendant had made a "[d]ecision or policy to discontinue collection." Exhibit A.

27.      As can also be seen on each of the 1099-C forms, Defendant Chase had attempted to send these forms to Plaintiff but they had been returned to sender. Exhibit A.

28.      Upon information and belief, Defendants Chase and BOA maintain policies and procedures which indicate that Defendants would no longer attempt to collect outstanding amounts owed on Plaintiff's Accounts.

29.      Plaintiff was unaware of these Accounts at the time that Defendants Chase and BOA had charged them off.

5

30.     It was not until 2014, after Plaintiff was denied credit through Comenity Capital Bank that he discovered that these Accounts were on his credit report.

31.     After Defendants Chase and BOA had cancelled Plaintiff's Accounts, Defendants did not make further efforts to collect the outstanding balance on the Accounts.

32.     After Defendants Chase and BOA had cancelled Plaintiff's Accounts, Defendants did not transfer the Accounts to third party debt collectors to collect the outstanding balance on the Accounts.

33.     Upon information and belief, Defendants Chase and BOA had discharged the Accounts and had no intention to collect the discharged amounts from Plaintiff.

34.     Upon information and belief, the Internal Revenue Service—not Defendants Chase and BOA—is the entity that had a right to collect the outstanding amounts from Plaintiff, in the form of taxable revenue on Plaintiff's tax returns.

35.     In January 2017, Plaintiff disputed the accuracy of the Accounts to TransUnion, LLC.

36.     Upon information and belief, TransUnion, LLC provided Defendants Chase and BOA with notice of Plaintiff's dispute.

37.     In a report issued February 18, 2017, TransUnion, LLC responded to Plaintiff's dispute and continued to show that there still remained a past due balance owed on each of the Accounts.

38.     In January 2017, Plaintiff disputed the accuracy of the Accounts to Experian.

39.     Upon information and belief, Experian provided Defendants Chase and BOA with notice of Plaintiff's dispute.

40.     In a report issued February 23, 2017, Experian responded to Plaintiff's dispute

and continued to show that there still remained a past due balance owed on each of the Accounts.

41.     On or around January 2017, Plaintiff disputed the accuracy of the Accounts to Equifax.

42.     Upon information and belief, Equifax provided Defendants Chase and BOA with notice of Plaintiff's dispute.

43.     On or about March 15, 2017, Equifax responded to Plaintiff's dispute and continued to show that there still remained a past due balance owed on each of the Accounts.

44.     The Accounts listed on Plaintiff's credit reports have continued to adversely affect Plaintiff's credit.

45.     As a result, many of Plaintiff's applications for credit with various companies have been denied from 2014 through 2017.

46.     At all times material hereto Equifax, Experian and TransUnion, LLC ("Defendant CRA's") are consumer reporting agencies regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports, as said term is defined under 15 U.S.C. § 1681(d) to third parties.

47.     At all times material hereto, Defendant CRA's disbursed such consumer reports to third parties under a contract for monetary compensation.

48.     Defendants Chase and BOA are person(s) who furnish information to consumer reporting agencies under 15 U.S.C. § 1681s-2.

49.     Upon receipt of the disputes of the account from the Plaintiff by Defendant CRAs, Defendants Chase and BOA failed to conduct a reasonable investigation and continued to report false and inaccurate adverse information on the consumer report of the Plaintiff with respect to the disputed accounts.

50.     Despite the disputes by the Plaintiff that the information on his consumer report

7

was inaccurate with respect to the disputed accounts, Defendant CRAs did not evaluate or consider any of the information, claims, or evidence of the Plaintiff and did not make an attempt to substantially reasonably verify that the derogatory information concerning the disputed accounts was inaccurate.

## COUNT I
### VIOLATION OF 15 U.S.C. § 1681s-2(b)

51.     Plaintiff repeats and re-alleges each and every factual allegation above.

52.     "[T]he court determines that the issuance of a Form 1099–C reflects that a financial institution has, in accordance with 26 U.S.C. § 6050P and 26 C.F.R. § 1.6050P–1, discharged an indebtedness, which must then be reported by the debtor as taxable income." In re Reed, 492 B.R. 261, 272 (Bankr. E.D. Tenn. 2013) (italics in original).

53.     "The actions described as 'identifiable events' in 26 C.F.R. § 1.6050P–1— consisting of . . . a creditor's defined policy or determination to discharge the debt—reflect the intention that cancellation of indebtedness income must be based upon an event that does, in fact, relieve a debtor from his or her obligation to pay the indebtedness." Id. at 272-273.

54.     "It is inequitable to require a debtor to claim cancellation of debt income as a component of his or her gross income and subsequently pay taxes on it while still allowing the creditor, who has reported to the Internal Revenue Service and the debtor that the indebtedness was cancelled or discharged, to then collect it from the debtor." Id. at 271.

55.     Defendants Chase and BOA violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate the Plaintiff's dispute of the reporting of inaccurate information about Plaintiff to consumer reporting agencies, by failing to review all relevant information regarding the same, and by failing to appropriately respond to the consumer reporting agency, including by

8

continuing to report that Plaintiff owes the full balance amount on Accounts Defendants wrote off five years ago without making any attempt to collect.

56.     As a result of Defendants' Chase and BOA conduct as described herein, Plaintiff has suffered damages including, but not limited to, loss of credit, loss of the ability to purchase and benefit from credit, time and expense disputing the incorrect reporting, humiliation and embarrassment of credit denials, and mental and emotional pain and anguish.

57.     Defendants' Chase and BOA conduct, actions, and/or inaction was willful, rendering them liable to Plaintiff for damages pursuant to 15 U.S.C. § 1681n.

58.     In the alternative, Defendants' Chase and BOA conduct, action(s), and/or inaction were negligent, entitling Plaintiff to recover damages under 15 U.S.C. § 1681o.

**COUNT 2**
**VIOLATION OF 15 U.S.C. § 1601(e)**

59.     Plaintiff repeats and re-alleges each and every factual allegation above.

60.     Defendants Equifax, Experian and TransUnion, LLC ("Defendant CRAs") violated 15 U.S.C. § 1601(e) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files that Defendant CRAs maintained concerning the Plaintiff.

61.     Defendant CRAs have willfully and recklessly failed to comply with the Act. The failure of Defendant CRAs to comply with the Act include but are not necessarily limited to the following:

a) The failure to follow reasonable procedures to assure the maximum possible accuracy of the information reported;

b) The failure to correct erroneous personal information regarding the Plaintiff after a reasonable request by the Plaintiff;

9

c) The failure to remove and/or correct the inaccuracy and derogatory credit information after a reasonable request by the Plaintiff;

d) The failure to promptly and adequately investigate information which Defendant CRA's had notice was inaccurate;

e) The continual placement of inaccurate information into the credit report of the Plaintiff after being advised by the Plaintiff that the information was inaccurate;

f) The failure to note in the credit report that the Plaintiff disputed the accuracy of the information;

g) The failure to promptly delete information that was found to be inaccurate, or could not be verified, or that the source of information had advised Defendant CRAs to delete;

h) The failure to take adequate steps to verify information Defendant CRAs had reason to believe was inaccurate before including it in the credit report of the consumer.

62.     As a result of the conduct, action and inaction of Defendant CRAs, the Plaintiff suffered damage by loss of credit, loss of ability to purchase and benefit from credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denial.

63.     The conduct, action and inaction of Defendant CRAs was willful rendering Defendant CRAs liable for actual, statutory and punitive damages in an amount to be determined by a Judge/ and or Jury pursuant to 15 U.S.C. § 1681(n).

64.     The Plaintiff is entitled to recover reasonable costs and attorney's fees from Defendant CRAs in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681(n).

65.     In the alternative, Defendant CRAs' conduct, action(s), and/or inaction was negligent, entitling Plaintiff to recover damages under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a) Adjudging that Defendant CRA's violated 15 U.S.C. § 1681s-2(b);

b) Awarding Plaintiff statutory or actual damages, pursuant to 15 U.S.C. § 1640(a)(1)

(2), 1681n(a)(1)(A) and 1681o(a);

c) Awarding Plaintiff reasonable attorneys' fees and costs incurred in this action,

pursuant to 15 U.S.C. § 1640(a)(3), 15 U.S.C. §§ 1681n(a)(3) and 1681o(a);

d) Awarding Plaintiff punitive damages, pursuant to 15 U.S.C. § 1681n(a)(2);

e) Awarding such other and further relief as the Court may deem just, equitable and

proper.

## TRIAL BY JURY

66.     Plaintiff is entitled to and hereby demands a trial by jury.

# VERIFICATION

I, SEAN M. MURRAY, the Plaintiff in the above-entitled action, have read the foregoing Complaint and know the contents thereof. The same is true as to my knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters, I believe them to be true.

To the best of my knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the presentation of these papers or the contentions therein are not frivolous as defined in Subsection (c) of Section 130-1.1 of the Rules of the Chief Administrative Judge (22 NYCRR)

28 U.S. Code § 1746 (1) - Unsworn declarations under penalty of perjury
I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Exhibits (3 pages)                                    Executed on Thursday, May 31, 2018.

SEAN M. MURRAY Plaintiff Pro Se

**Uniform Certificate of Acknowledgment:**

State of New York )
                 ) ss
County of Queens )

On the 31 day of May in the year 2018 before me, the undersigned, personally appeared Sean M. Murray personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Signature and office of individual taking acknowledgment

LINA M ATEHORTUA
Notary Public, State of New York
No. 01AT6263977
Qualified in Queens County
Commission Expires June 25, 2020

Exhibit "A"



**CHASE ◉**

P.O. BOX 15298
WILMINGTON DE 19850

**Tax Year 2012 Form 1099-C Cancellation of Debt (Copy B)**

This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if taxable income results from this transaction and the IRS determines that it has not been reported.

| Debtor's Information | Creditor's Information |
|---|---|
| 55899 TAS 1Z1 2513 –   55  0032 80  (00.350) | Federal ID Number: ▮▮▮▮2028 |
| SEAN MURRAY | CHASE BANK USA, NA |
| 3521 79TH ST | |
| APT 4E | |
| JACKSON HEIGHTS, NY 11372 | |
| | **Form 1099-C Questions** |
| | Phone Support: 866-578-2888 |

Debtor's ID Number: XXX-XX-8657                    Original

## Summary of Form 1099-C Cancellation of Debt

(OMB No. 1545-1424)

| Box | Description | Amount | Box | Description | Amount |
|---|---|---|---|---|---|
| 1. | Date of identifiable event | 10/27/2012 | 5. | Was borrower personally liable for repayment of the debt? | (See Details) |
| 2. | Amount of debt discharged | $5,341.57 | 6. | Identifiable event code | G |
| 3. | Interest if included in box 2 | $0.00 | 7. | Fair market value of property | $0.00 |
| 4. | Debt Description | CREDIT CARD ACCOUNT | | | |

## Details of Form 1099-C Cancellation of Debt

(OMB No. 1545-1424)

| Account Number<br>Acct Description | Box #1<br>Date of<br>identifiable event | Box #2<br>Amount of debt<br>discharged | Box #3<br>Int. included<br>in box 2 | Other Boxes | |
|---|---|---|---|---|---|
| 54662▮▮▮▮ | 10/27/2012 | $5,341.57 | $0.00 | #4 Debt description | CREDIT CARD ACCOUNT |
| | | | | #5 Was borrower personally liable for repayment of the debt? | Yes |
| | | | | #6 Identifiable event code | G |

```
        N I X I E      1 0 D   F E  1       D O  0 4 / 0 8 / 1 3
                   RETURN TO SENDER
            NOT DELIVERABLE AS ADDRESSED
                   UNABLE TO FORWARD
        BC:  1 9 8 5 0 5 2 9 8 9 8    * 1 6 8 3 - 0 0 3 7 3 - 0 7 - 2 8
```

**Instructions for Debtor**

You received this form because a Federal Government agency (financial entity (a lender) has discharged (canceled or forgiven) or because an identifiable event has occurred that either is or is discharge of a debt of $600 or more. If a creditor has discharge owed, you are required to include the discharged amount in your income, even if it is less than $600, on the "Other income" line of your Form 1040. However, you may not have to include all of the canceled debt in your income. There are exceptions and exclusions, such as bankruptcy and insolvency. See Pub. 4681, available at IRS.gov, for more details. If an identifiable event has occurred but the debt has not actually been discharged, then include any discharged debt in your income in the year that it is actually discharged, unless an exception or exclusion applies to you in that year.

Debtor's identification number. For your protection, this form may show only the last four digits of your SSN, ITIN, or ATIN. However, the issuer has reported your complete identification number to the IRS, and, where applicable, to state and/or local governments.

Account number. May show an account or other unique number the creditor assigned to distinguish your account.

Box 1. Shows the date the earliest identifiable event occurred or, at the creditor's discretion, the date of an actual discharge that occurred before an identifiable event. See the code in box 6.

Box 2. Shows the amount of debt either actually or deemed discharged. Note. If you do not agree with the amount, contact your creditor.

Box 3. Shows interest if included in the debt reported in box 2. See Pub. 4681 to see if you must include the interest in gross income.

See Pub. 4681 for reporting instructions.

Box 6. May show the reason your creditor has filed this form. The codes in this box are described in more detail in Pub. 4681. A—Bankruptcy; B—Other judicial debt relief; C—Statute of limitations or expiration of deficiency period; D—Foreclosure election; E—Debt relief from probate or similar proceeding; F—By agreement; G—Decision or policy to discontinue collection; H—Expiration of nonpayment testing period; or I—Other actual discharge before identifiable event.

Box 7. If, in the same calendar year, a foreclosure or abandonment of property occurred in connection with the cancellation of the debt, the fair market value (FMV) of the property will be shown, or you will receive a separate Form 1099-A. Generally, the gross foreclosure bid price is considered to be the FMV. For an abandonment or voluntary conveyance in lieu of foreclosure, the FMV is generally the appraised value of the property. You may have income or loss because of the acquisition or abandonment. See Pub. 4681 for information about foreclosures and abandonments. If the property was your main home, see Pub. 523 to figure any taxable gain or ordinary income.

Future developments. The IRS has created a page on IRS.gov for information about Form 1099-C and its instructions, at www.irs.gov/form1099c. Information about any future developments affecting Form 1099-C (such as legislation enacted after we release it) will be posted on that page.


**CHASE**
P.O. BOX 15298
WILMINGTON DE 19850

**Tax Year 2012 Form 1099-C Cancellation of Debt (Copy B)**
This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if taxable income results from this transaction and the IRS determines that it has not been reported.

---

**Debtor's Information**

39570 TAS 122 1813 –   65  0031 50  (00.350)

SEAN MURRAY
3521 79TH ST
APT 4E
JACKSON HEIGHTS, NY 11372

**Creditor's Information**

Federal ID Number: ███████2028
CHASE BANK USA, NA

**Form 1099-C Questions**

Phone Support. 866-578-2888

Debtor's ID Number: XXX-XX-8657                    **Original**

---

## Summary of Form 1099-C Cancellation of Debt                                    (OMB No. 1545-1424)

| Box | Description | Amount | Box | Description | Amount |
|-----|-------------|--------|-----|-------------|--------|
| 1. | Date of identifiable event | 10/27/2012 | 5. | Was borrower personally liable for repayment of the debt? | (See Details) |
| 2. | Amount of debt discharged | $1,063.16 | 6. | Identifiable event code | G |
| 3. | Interest if included in box 2 | $0.00 | 7. | Fair market value of property | $0.00 |
| 4. | Debt Description | CREDIT CARD ACCOUNT | | | |

---

## Details of Form 1099-C Cancellation of Debt                                    (OMB No. 1545-1424)

| Account Number / Acct Description | Box #1 Date of identifiable event | Box #2 Amount of debt discharged | Box #3 Int. included in box 2 | Other Boxes | |
|-----------------------------------|-----------------------------------|----------------------------------|-------------------------------|-------------|--|
| 54660█████████ | 10/27/2012 | $1,063.16 | $0.00 | #4 Debt description | CREDIT CARD ACCOUNT |
| | | | | #5 Was borrower personally liable for repayment of the debt? | Yes |
| | | | | #6 Identifiable event code | G |

NIXIE        100    DE 1              DD 04/08/13
RETURN TO SENDER
NOT DELIVERABLE AS ADDRESSED
UNABLE TO FORWARD
BC:  19850529898                    *1683-00366-07-28

---

### Instructions for Debtor

You received this form because a Federal Government a financial entity (a lender) has discharged (canceled or for or because an identifiable event has occurred that either discharge of a debt of $600 or more. If a creditor has disc owed, you are required to include the discharged amount It is less than $600, on the "Other Income" line of your Form may not have to include all of the canceled debt in your income. There are exceptions and exclusions, such as bankruptcy and insolvency. See Pub. 4681, available at IRS.gov, for more details. If an identifiable event has occurred but the debt has not actually been discharged, then include any discharged debt in your income in the year that it is actually discharged, unless an exception or exclusion applies to you in that year.

Debtor's identification number. For your protection, this form may show only the last four digits of your SSN, ITIN, or ATIN. However, the issuer has reported your complete identification number to the IRS, and, where applicable, to state and/or local governments.

Account number. May show an account or other unique number the creditor assigned to distinguish your account.

Box 1. Shows the date the earliest identifiable event occurred or, at the creditor's discretion, the date of an actual discharge that occurred before an identifiable event. See the code in box 6.
Box 2. Shows the amount of debt either actually or deemed discharged. Note. If you do not agree with the amount, contact your creditor.

Box 3. Shows interest if included in the debt reported in box 2. See Pub. 4681 to see if you must include the interest in gross income.

...repayment of the debt ...... o modified, at the time of the last modification.

See Pub. 4681 for reporting instructions.

Box 6. May show the reason your creditor has filed this form. The codes in this box are described in more detail in Pub. 4681. A—Bankruptcy; B—Other judicial debt relief; C—Statute of limitations or expiration of deficiency period; D —Foreclosure election; E—Debt relief from probate or similar proceeding; F—By agreement; G—Decision or policy to discontinue collection; H—Expiration of nonpayment testing period; or I—Other actual discharge before identifiable event.

Box 7. If, in the same calendar year, a foreclosure or abandonment of property occurred in connection with the cancellation of the debt, the fair market value (FMV) of the property will be shown, or you will receive a separate Form 1099-A. Generally, the gross foreclosure bid price is considered to be the FMV. For an abandonment or voluntary conveyance in lieu of foreclosure, the FMV is generally the appraised value of the property. You may have income or loss because of the acquisition or abandonment. See Pub. 4681 for information about foreclosures and abandonments. If the property was your main home, see Pub. 523 to figure any taxable gain or ordinary income.

Future developments. The IRS has created a page on IRS.gov for information about Form 1099-C and its instructions, at www.irs.gov/form1099c. Information about any future developments affecting Form 1099-C (such as legislation enacted after we release it) will be posted on that page.



P.O. BOX 15298
WILMINGTON DE 19850

**Tax Year 2012 Form 1099-C Cancellation of Debt (Copy B)**

This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if taxable income results from this transaction and the IRS determines that it has not been reported.

---

| Debtor's Information | Creditor's Information |
|---|---|
| 59155 TAS 1Z1 2513 –   55  0032 60  (00.350) | Federal ID Number: ███████2028 |
| SEAN MURRAY | CHASE BANK USA, NA |
| 3521 79TH ST | |
| APT 4E | |
| JACKSON HEIGHTS, NY 11372 | |

**Form 1099-C Questions**

Phone Support: 866-578-2888

Debtor's ID Number: XXX-XX-8857                    Original

### Summary of Form 1099-C Cancellation of Debt                                              (OMB No. 1545-4424)

| Box | Description | Amount | Box | Description | Amount |
|---|---|---|---|---|---|
| 1. | Date of identifiable event | 10/27/2012 | 5. | Was borrower personally liable for repayment of the debt? | (See Details) |
| 2. | Amount of debt discharged | $12,529.23 | 6. | Identifiable event code | G |
| 3. | Interest if included in box 2 | $0.00 | 7. | Fair market value of property | $0.00 |
| 4. | Debt Description | CREDIT CARD ACCOUNT | | | |

### Details of Form 1099-C Cancellation of Debt                                              (OMB No. 1545-4424)

| Account Number Acct Description | Box #1 Date of Identifiable event | Box #2 Amount of debt discharged | Box #3 Int. included in box 2 | Other Boxes |
|---|---|---|---|---|
| 42666████ | 10/27/2012 | $12,529.23 | $0.00 | #4 Debt description                          CREDIT CARD ACCOUNT |
| | | | | #5 Was borrower personally liable for repayment of the debt?     Yes |
| | | | | #6 Identifiable event code                                   G |

NIXIE        100   02 1                   00 04/08/13
RETURN TO SENDER
NOT DELIVERABLE AS ADDRESSED
UNABLE TO FRWARD                             *1683-00374-07-28

BC:  19850529898

### Instructions for Debtor

You received this form because a Federal Government agency or financial entity (a lender) has discharged (canceled or forgiven) a debt or because an identifiable event has occurred that either is or is deemed to be a discharge of a debt of $600 or more. If a creditor has discharged a debt owed, you are required to include the discharged amount in your income if it is less than $600, on the "Other Income" line of your Form 1040. I may not have to include all of the canceled debt in your income. The exceptions and exclusions, such as bankruptcy and insolvency. See available at IRS.gov, for more details. If an identifiable event has occurred but the debt has not actually been discharged, then include any discharged debt in your income in the year that it is actually discharged, unless an exception or exclusion applies to you in that year.

Debtor's identification number. For your protection, this form may show only the last four digits of your SSN, ITIN, or ATIN. However, the issuer has reported your complete identification number to the IRS, and, where applicable, to state and/or local governments.

Account number. May show an account or other unique number the creditor assigned to distinguish your account.

Box 1. Shows the date the earliest identifiable event occurred or, at the creditor's discretion, the date of an identifiable event that occurred before an identifiable event. See the code in box 6.
Box 2. Shows the amount of debt either actually or deemed discharged. Note. If you do not agree with the amount, contact your creditor.

Box 3. Shows interest if included in the debt reported in box 2. See Pub. 4681 to see if you must include the interest in gross income.

box 6. May show the reason your creditor has filed this form. The codes in this box are described in more detail in Pub. 4681. A—Bankruptcy; B—Other judicial debt relief; C—Statute of limitations or expiration of deficiency period; D —Foreclosure election; E—Debt relief from probate or similar proceeding; F—By agreement; G—Decision or policy to discontinue collection; H—Expiration of nonpayment testing period; or I—Other actual discharge before identifiable event.

Box 7. If, in the same calendar year, a foreclosure or abandonment of property occurred in connection with the cancellation of the debt, the fair market value (FMV) of the property will be shown, or you will receive a separate Form 1099-A. Generally, the gross foreclosure bid price is considered to be the FMV. For an abandonment or voluntary conveyance in lieu of foreclosure, the FMV is generally the appraised value of the property. You may have income or loss because of the acquisition or abandonment. See Pub. 4681 for information about foreclosures and abandonments. If the property was your main home, see Pub. 523 to figure any taxable gain or ordinary income.

Future developments. The IRS has created a page on IRS.gov for information about Form 1099-C and its instructions, at www.irs.gov/form1099c. Information about any future developments affecting Form 1099-C (such as legislation enacted after we release it) will be posted on that page.

Page 1